**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GOLDEN KRUST FRANCHISING, INC.,

      Petitioner,

      v.

AUCTUS RESTAURANT GROUP, INC.
and KLAYROCK, LLC,

      Respondents.

**Civil Action No.**

## PETITION TO VACATE ARBITRATION AWARD

Petitioner Golden Krust Franchising, Inc. d/b/a Golden Krust Caribbean Bakery & Grill ("Golden Krust" or "Petitioner"), hereby petitions this Court pursuant to 9 U.S.C. § 10 to vacate an arbitration award entered in favor of Auctus Restaurant Group, Inc. and Klayrock, LLC (collectively, "Respondents"), and in support of such petition states as follows:

## SUMMARY OF THE ACTION

1.    Petitioner brings this action to vacate the award rendered in favor of Respondents because the arbitration award has no connection with, and in fact is entirely inconsistent with the liability findings made by the arbitrator.  Respondents – franchisees of Golden Krust in South Florida – complained in arbitration that Golden Krust treated them differently than "family owned" franchisees in South Florida – franchises owned and operated by members of the Hawthorne family that founded Golden Krust. Petitioner does not seek a redetermination of any of the arbitrator's liability findings.  However, in violation of Second Circuit precedent, the arbitrator's liability and damages findings are contradictory, inconsistent, and incoherent because she granted an award based on a damages analysis that applied only to claims she specifically rejected.

2.     Specifically, here, the arbitrator found for Golden Krust on Respondents' principal claim that Respondents' cost of goods sold ("COGS") were unreasonably high due to Golden Krust's conduct.   Respondents' entire damages theory was tethered to that COGS claim that Respondents lost.   The only two claims on which the arbitrator found for Respondents was that Golden Krust charged lower royalties and advertising fees to "family-owned" franchisees and charged "family-owned" franchisees lower prices on food products manufactured by Golden Krust.   Those claims had nothing to do with COGS.   COGS are the cost of products and commodities sold at Respondents' restaurants.   Royalties and advertising fees have no connection to the cost of products but rather are a percentage of gross sales at the restaurants.   And Respondents' expert admitted that differentials in royalties, advertising fees and pricing played no role whatsoever in his COGS-based damages theory.

3.     The evidence in the record shows that the appropriate measure of damages on the two claims on which the arbitrator found for Respondents was $61,746.47 – less than 10% of the arbitrator's award on those claims.   Nevertheless, the arbitrator – without any explanation – awarded Respondents $623,090 in alleged "lost past profits" damages using the COGS-based damages theory even though the arbitrator rejected the COGS claim, and the two claims on which Respondents prevailed had nothing to do with COGS.   That damages result, therefore, is entirely inconsistent with the arbitrator's liability findings on Respondents' favorable royalties and advertising fees and pricing claims. This internal inconsistency and contradictory award should be vacated under established Second Circuit precedent.

4.     In addition, the award should be vacated on the grounds of manifest disregard of the law because (i) lost past profits are not recoverable under the Florida Deceptive and Unfair Trade Practices and, and (ii) no fact or expert evidence was introduced to establish any type of

causal nexus between the alleged past lost profits awarded and the conduct on which the arbitrator based her liability findings.

5.      Finally, the award should be vacated because the arbitrator awarded Respondents the entirety of the fees and costs they were seeking – $899,184.17 – which is 150% of the inflated damages awarded to Respondents.  The arbitrator inexplicably found Respondents to be the prevailing party even though they lost 2/3 of the claims in the case and were awarded only 9% of the damages they were seeking.  The arbitrator also ignored the factors required to be analyzed when considering a fee petition under the Florida Deceptive and Unfair Trade Practices Act and failed to reduce the fees and costs due to Respondents' over-arching lack of success, as is required under New York and Florida law.  Finally, in another inconsistency, the arbitrator inexplicably double counted the AAA fees and costs paid by Respondents and ordered Golden Krust to reimburse Respondents twice for those same fees and costs, egregiously producing yet another windfall to Respondents.

6.      A Memorandum of Law and Declaration of Support of the Petition to Vacate Arbitration Award is filed herewith.

## **PARTIES**

7.      Petitioner is a New York corporation, having its principal place of business in White Plains, New York.  Petitioner is the franchisor of Golden Krust Caribbean Bakery & Grill, a bakery and restaurant which offers and sells Jamaican and West Indian cuisine.

8.      Upon information and belief, Respondent Auctus Restaurant Group, Inc. ("Auctus") is a Florida corporation that owns and operates a Golden Krust restaurant located in Coconut Creek, Florida.

9.      Upon information and belief, Respondent Klayrock, LLC ("Klayrock") is a Florida limited liability company that owned and operated a Golden Krust restaurant located in Pembroke Pines, Florida.

## JURISDICTION

10.     This Court has personal jurisdiction over Respondents because the Franchise Agreements between Petitioner and each of the Respondents, respectively, provide that all controversies, disputes or claims between the parties arising out of or related to the Franchise Agreements and/or the parties' relationship will be submitted for arbitration to the White Plains, New York office of the American Arbitration Association, and that such arbitration proceedings will be conducted in White Plains, New York.  *See* Exhibits 2 & 3 at Section XVII(E) to the September 8, 2020 Declaration of Aaron Van Nostrand.[1]

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 based on the complete diversity of citizenship of the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

12.     Venue is proper in this district pursuant to 9 U.S.C. § 10, because this is the district in which the arbitration award was made.

---

[1] All exhibits referenced herein are attached to the Van Nostrand Declaration.

## FACTUAL BACKGROUND

### A.  The Franchise Agreements

13.     Golden Krust is the leading and largest franchisor of authentic Caribbean cuisine. Golden Krust has been in the restaurant business for thirty years, and in the franchise business for over twenty years.

14.     In or around March 2011, Auctus entered into a franchise agreement with Golden Krust to operate a Golden Krust Caribbean Bakery & Grill at 4861 Coconut Creek Parkway, Coconut Creek, FL 33063.  *See* Exhibit 2.

15.     In or around April 19, 2012, Klayrock entered into a Franchise Agreement to operate a Golden Krust Caribbean Bakery & Grill at 620 University Drive, Pembroke Pines, FL 33024.  *See* Exhibit 3.  Klayrock unilaterally closed the Pembroke Pines location in November 2018, prior to the expiration of the franchise agreement.

### B.  The Arbitration

16.     On August 12, 2019, and pursuant to the parties' Franchise Agreements, Respondents commenced an arbitration proceeding against Petitioner by way of Statement of Claim in Connection with Demand for Arbitration ("Statement of Claim"). *See* Exhibit 4.

17.     The Statement of Claim asserted the following causes of action: (1) breach of the Coconut Creek and Pembroke Pines Franchise Agreements, (2) breach of the implied covenant of good faith and fair dealing implied in the Franchise Agreements, (3) violation of the Florida Franchise Act (Section 817.416, Fla. Stat.), (4) tortious interference in the same of the Coconut Creek restaurant, (5) tortious interference with prospective economic advantage with customers, (6) violation of the New York Deceptive and Unfair Trade Practice Act, and (7) federal price discrimination (15 U.S.C. § 13(a)).  *Id.*

18.     On October 4, 2019, Respondents advised that they intended to rely on the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUTPA"), rather than the New York Deceptive and Unfair Trade Practice Act.  Respondents did not set forth the alleged basis for their FDUTPA claim.  *See* Exhibit 5.

19.     On October 23, 2019, Golden Krust filed a Response to Amended Demand for Arbitration, Affirmative Defenses and Counterdemand and Third-Party Demand for Arbitration. *See* Exhibit 6.

20.     The arbitration continued thereafter with written and oral discovery and motion practice on various issues.

21.     Respondents submitted a damages report seeking up to $7,197,566 in damages for the claims asserted by Respondents in the arbitration proceeding.  That damages report was dependent on an allegation that Respondents' COGS were too high.  *See* Exhibit 7.

22.     Respondents' damages expert opined that Respondents' COGS were higher than industry averages.  The expert did not do any analysis of his own.  Rather, he simply looked at information on costs associated with other dissimilar franchise chains.  The expert reduced Respondents' reported COGS with the selected industry average. *See* Exhibit 7.

23.     The expert then provided what was called a "lost profits" number solely based on the lower COGS.  To calculate lost past profits, Respondents' expert simply (i) reduced Respondents' COGS to be consistent with industry average, and (ii) calculated the difference between Respondents' actual profits and Respondents' hypothetical profits after the COGS reduction.  The damages report considered no other information, and Golden Krust submitted a rebuttal report detailing the errors and fallacies in Respondents' expert report.  *See* Exhibit 7.

24. Respondents' expert admitted that differentials in royalties, advertising fees and pricing played no role whatsoever in his COGS-based damages theory. *See* Exhibit 9 at 640:2-5; 642:2-6; 712:25-713:18.

25. A full hearing on the merits was held virtually via Zoom on May 28 and 29 and June 12, 2020.

**C. The Arbitrator's Interim Decision**

26. On July 23, 2020, the Arbitrator issued the Interim Decision on liability. *See* Exhibit 1 at Ex. A. The Interim Decision found Golden Krust liable to Respondents on the following two claims:

> (1) Breach of contract and under FDUTPA for charging Family Owned Stores – franchises owned and operated by members of the family of the founder of Golden Krust – lower royalties and advertising fees than Respondents were charged.
>
> (2) Violation of FDUTPA for extending favorable pricing to Family Owned Stores.

*Id.* at 5-6.

27. Neither of the two claims on which the arbitrator found for Respondents had anything to do with COGS.

28. The Arbitrator rejected Respondents' other six claims, namely:

> (1) Federal price discrimination under the Robinson-Patman Act for extending favorable pricing to family owned franchisees
>
> (2) Breach of contract and breach of the implied covenant of good faith and fair dealing as a result of extending favorable credit terms to Family Owned Stores
>
> (3) Breach of contract as a result of Golden Krust's sale to Respondents of unusable product and Golden Krust's poor return and replacement system.
>
> (4) Breach of contract and breach of the implied covenant of good faith and fair dealing as a result of unsustainable COGS that were higher than industry average.
>
> (5) Tortious interference in the sale of Respondents' Coconut Creek restaurant.

(6) Breach of the Florida Franchise Act and breach of the implied covenant of good faith and fair dealing as a result of Golden Krust's oversaturation of the South Florida Market.

*Id.* at 5-8.

29.     In the Interim Decision, the Arbitrator found that Respondents were entitled to lost past profits of $623,090 on their breach of contract and FDUTPA claims for advertising fee/royalty fee differentials and price differentials.  *Id.* at 9.  Although not explained in the Interim Decision, that number is understood to come from Respondents' expert's COGS-based damages report (*see* Exhibit 7 at 25, Exs. C-1, C-2), even though Respondents' COGS-related claims and theories were expressly rejected by the Arbitrator's liability findings and have no connection to Respondents' favorable advertising fee/royalties and pricing claims.

**D.  The Motion to Correct**

30.     On July 28, 2020, Golden Krust filed a Motion To Correct Computation Of Damages Award To Conform With Arbitrator's Merits Determination ("Motion to Correct").  The Motion to Correct sought to correct the internal inconsistency and computational problem with the Interim Decision: the Arbitrator rejected all of Respondents' COGS claims, yet the past "lost profits" damages awarded (a) were based on Respondents' damages analysis that relied exclusively and completely on Respondents' rejected COGS claims, and (b) have no connection whatsoever with the liability or evidentiary findings actually made.  *See* Exhibit 11.

31.     In the Motion to Correct, Golden Krust pointed out that, based on the entire evidentiary record and Respondents' expert's own clear and binding admissions, the expert's lost profits calculation was inapplicable to Respondents' claims for differential royalties and advertising fees and favorable pricing – the only claims on which the Arbitrator found for Respondents.  *Id.*

32.    Because the Arbitrator rejected Respondents' COGS position, the COGS lost profits amount would not be a correct or fair computation of damages and the award was internally inconsistent and contracted by the Arbitrator's liability findings in Golden Krust's favor.

33.    Even though Golden Krust made clear that it was not seeking a redetermination of the merits and simply sought review of the arbitrator's computational error, on August 10, 2020, the Arbitrator denied the Motion to Correct because it was beyond the scope of Commercial Arbitration Rule 50:

> The relief Golden Krust seeks is beyond the scope of Rule 50. The Interim Decision calculated Claimants' actual damages by measuring their lost past profits, an entirely appropriate measure of damages. To grant Golden Krust's motion, the Arbitrator would have to determine that Claimants are not entitled to past lost profits on their claims. Such an analysis is a redetermination of the measure of Claimants' damages, not the correction of a computational error. Accordingly, the Motion is denied.

*See* Exhibit 12.

34.    In disregard of AAA Rule 50, the arbitrator failed to recognize, explain or correct the clear internal inconsistency and computational error in the Interim Decision.

**E.  The Final Award**

35.    The Interim Decision invited the parties to "apply for a determination of an award of attorneys' fees and costs pursuant to the Agreements, applicable law, and the Commercial Rules of the American Arbitration Association." The parties filed fee applications on August 10, 2020. *See* Exhibits 13-14.  Respondents sought $749,525.50 in attorneys' fees and $149,658.67 in costs. Golden Krust sought $494,359.14 in attorneys' fees and $49,482.90 in costs.

36.    On September 4, 2020, the Arbitrator issued the Final Award to the parties.  *See* Exhibit 1.  The Final Award fully incorporated the Interim Decision.

Case 7:20-cv-07321-KMK   Document 1   Filed 09/08/20   Page 10 of 12

37.     Despite the fact that the Arbitrator found for Respondents on only 2/3 of the claims – and on none of the claims that drove the arbitration – and Respondents were awarded only 9% of the damages they were seeking, the arbitrator concluded – without any explanation, analysis or reasoning – that Respondents were the prevailing parties and were entitled to all of their attorneys' fees and costs – a total of $899,184.17.  *Id.* at ¶ 2.

38.     Although Golden Krust prevailed on 2/3 of the claims asserted by Auctus and Klayrock, the arbitrator denied Golden Krust's motion for attorneys' fees and costs in its entirety. *Id.* at ¶ 3.

39.     In yet another inconsistency, the arbitrator chose to award Respondents an extra benefit of $35,600 in AAA fees even though the arbitrator already included the AAA fees paid by Respondents in the $149,658.67 in costs awarded to Respondents.  The arbitrator acknowledged this obvious fact and created this additional inconsistency because she said that the award of $149,658.67 in costs "include[ed] . . . AAA fees."  This extra award of $35,600 is a blatant error and another example of the awards being internally inconsistent and incongruous.  *Id.* at ¶ 2, 4.

40.     On September 8, 2020, Golden Krust made a motion to correct this error, which remains pending.  *See* Exhibit 16.

**PRAYER FOR RELIEF**

41.     The Final Award should be vacated because the Arbitrator's Interim Decision and Final Award were internally inconsistent and contradictory; as well as in manifest disregard of the applicable law.

42.     As set forth in detail in Golden Krust's Memorandum of Law, the grounds for vacating the Interim Decision and Final Award are as follows:

a.     In violation of Second Circuit caselaw, the Interim Decision is internally inconsistent on its face because the arbitrator rejected all of Respondents'

COGS claims, yet the past "lost profits" damages awarded (a) were, in reality, based on Respondents' damages analysis that relied exclusively and completely on Respondents' rejected COGS claims, and (b) had no connection whatsoever with the liability or evidentiary findings actually made on Respondents' favorable advertising fee/royalties and pricing claims. That calculation is internally inconsistent with and contradicted by the arbitrator's own liability findings.

b.  The award of lost profits to Respondents is in manifest disregard of the well-settled law that lost profits are not recoverable under the Florida Deceptive and Unfair Trade Practices Act.

c.  The award of lost profits to Respondents is in manifest disregard of the well-settled law that the recovery of lost profits explicitly requires a nexus between the liability finding and the damages awarded. No such causal nexus was presented here.

d.  The award of attorneys' fees was in manifest disregard of the well-settled law that arbitrator the prevailing party must have prevailed on the "significant issues in the litigation." Respondents here lost on 2/3 of the claims in the arbitration – including the claims that were driving the arbitration – and were awarded only 9% of their claimed damages, which precluded the finding that they were the prevailing party.

e.  The award of attorneys' fees was in manifest disregard of the well-settled law that the award of fees and costs is not mandatory under the Florida Deceptive

and Unfair Trade Practices Act and the arbitrator ignored the factors required to be analyzed when considering a fee application under that statute.

    f.   The award of attorneys' fees was in manifest disregard of the well-settled law that required the arbitrator to reduce Respondents' lodestar due to their lack of success.

    g.   The Final Award double counts the AAA fees and expenses paid by Respondents, orders Golden Krust to reimburse Respondents twice for those same costs, and it is internally inconsistent.

**WHEREFORE,** Petitioner respectfully requests that the Court enter an Order as follows:

A.  Vacating the Final Award issued in the Arbitration;

B.  Awarding Petitioner its costs and fees to the full extent provided by law; and

C.  Granting such other and further relief as this Court may deem to be just and proper.

Dated: September 8, 2020                       Respectfully submitted,

                                            */s/ Aaron Van Nostrand*
                                            Aaron Van Nostrand
                                            **GREENBERG TRAURIG, LLP**
                                            200 Park Avenue
                                            New York, New York 10166
                                            (212) 801-9200
                                            vannostranda@gtlaw.com

                                            *Attorney for Petitioner*
                                            *Golden Krust Franchising, Inc.*