UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GOLDEN KRUST FRANCHISING, INC.,

                Petitioner,

    v.

ACTUS RESTAURANT GROUP, INC. *and* KLAYROCK, LLC,

                Respondents.

No. 20-CV-7321 (KMK)

OPINION & ORDER

---

Appearances:

Aaron Van Nostrand, Esq.
Greenberg Traurig, LLP
New York, NY
*Counsel for Petitioner*

Brian Rosner, Esq.
Yolanda P. Strader, Esq.
Carlton Fields, P.A.
New York, NY
Miami, FL
*Counsel for Respondents*

KENNETH M. KARAS, District Judge:

I.  Background

    Petitioner Golden Krust Franchising, Inc. ("Golden Krust" or "Petitioner") has filed a Petition, pursuant to 9 U.S.C. § 10, to Vacate an Arbitration Award (the "Petition") entered in favor of Actus Restaurant Group, Inc. ("Actus") and Klayrock, LLC ("Klayrock," collectively, "Respondents"). (Pet. to Vacate Arb. Award ("Pet.") (Dkt. No. 1).) Respondents have filed a Cross-Petition to confirm the Arbitration Award. (Resp'ts' Answer & Counter-Pet. to Confirm

Arb. Award ("Counter-Pet.") (Dkt. No 19).) For the reasons stated herein, the Petitioner's Petition is denied, and the Respondents' Counter-Petition is granted.

### A. Factual Background

Golden Krust is the White Plains, New York-based franchisor of Golden Krust Caribbean Bakery & Grill, a restaurant and bakery offering Jamaican and West Indian cuisine. (Pet'r's Mem. in Supp. of Pet. to Vacate Arb. Award ("Pet'r's Mem.") 4 (Dkt. No. 6).) Actus and Klayrock are two small restaurant franchisees located in South Florida. (Resp'ts' Reply in Supp. of Cross-Pet. to Confirm Arb. Award ("Resp'ts' Reply") 1 (Dkt. No. 30).) Around March 2011, Actus entered into a franchise agreement ("Actus Franchise Agreement") to operate a Golden Krust Caribbean Bakery & Grill in Coconut Creek, Florida ("Coconut Creek Restaurant"). (Pet'r's Mem. 4–5.) On April 19, 2012, Klayrock entered into a franchise agreement ("Klayrock Franchise Agreement," collectively, the "Franchise Agreements") to operate a Golden Krust Caribbean Bakery & Grill in Pembroke Pines, Florida ("Pembroke Pines Restaurant"). (*Id.* at 5.) The Pembroke Pines Restaurant closed effective November 11, 2018. (Ex. U to Decl. of Strader in Supp. of Reply in Supp. of Counter-Pet to Confirm Arb. Award ("Strader Decl. Ex. U") ¶ 6 (Dkt. No. 29).) As of April 2020, the Coconut Creek Restaurant had temporarily closed as a result of the COVID-19 pandemic. (*Id.* ¶ 7.)

### B. Procedural History

On August 12, 2019, pursuant to the Parties' Franchise Agreements, Respondents commenced an arbitration proceeding against Petitioner, asserting seven causes of action: "(1) breach of the [Actus] and [Klayrock] Franchise Agreements, (2) breach of the implied covenant of good faith and fair dealing implied in the Franchise Agreements, (3) violation of the Florida Franchise Act [(Fla. Stat. § 817.416 )], (4) tortious interference in the same of the Coconut Creek

restaurant, (5) tortious interference with prospective economic advantage with customers, (6) violation of the New York Deceptive and Unfair Trade Practice Act [(N.Y. Gen. Bus. § 349)], and (7) federal price discrimination (15 U.S.C. § 13(a))." (Pet'r's' Mem. 5 (Dkt. No. 6)); *see generally also* Decl. of Aaron Van Nostrand, Esq. in Supp. of Pet. to Vacate Arbitration Award ("Van Nostrand Decl.") Ex. 4 ("Statement of Claim") (Dkt. No. 7-5).) On October 4, 2019, Respondents notified Petitioner that they intended to reply on the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, instead of the New York Deceptive and Unfair Trade Practice Act ("NYDUTPA"). (Pet'r's Mem. 5; *see also* Van Nostrand Decl. Ex. 5 ("Notice of Intent") 1 (Dkt. No. 7-7).) On October 23, 2019, Petitioner filed a Response to Amended Demand for Arbitration, Affirmative Defenses and Counterdemand, and Third-Party Demand for Arbitration, in which Petitioner brought a counterclaim against Klayrock for breach of the Klayrock Franchise Agreement and third-party action against Klayrock's principal Kishon Clayborne for indemnification. (Pet'r's Mem. 5; *see also* Van Nostrand Decl. Ex. 6 ('Response to Amended Demand") 1, 10 (Dkt. No. 7-8); Van Nostrand Decl. Ex. 10 ("Interim Decision") 2 (Dkt. No. 7-12).)

On May 28 and 29 and June 12, 2020, a full hearing on the merits was held virtually via Zoom. (Pet'r's Mem. 6; Interim Decision 2.) On July 23, 2020, the arbitrator issued an Interim Decision on liability, finding Petitioner liable to Respondents for:

(1) Breach of contract and under FDUTPA for charging Family[-]Owned Stores – franchises owned and operated by members of the family of the founder of Golden Krust – lower royalties and advertising fees than Respondents were charged.

(2) Violation of FDUTPA for extending favorable pricing to Family[-]Owned Stores. Specifically, the arbitrator found that, up to February 2018, Golden Krust sold food products to Family[-]Owned Stores at lower prices than Golden Krust's distributor, Cheney Bros., sold the same products to Respondents.

(Pet'r's Mem. 6–7; Interim Decision 5–6.)  The arbitrator awarded Respondents lost past profits in the principal amount of $623,090.  (Pet'r's Mem. 8; *see also* Interim Decision 10.)

On July 28, 2020, Petitioner filed a Motion to Correct Computation of Damages Award To Conform with Arbitrator's Merits Determination ("Motion to Correct").  (Pet'r's Mem. 8; *see also* Van Nostrand Decl. Ex. 11 ("Motion to Correct") (Dkt. No. 7-13).)  Petitioner argued that the damages award reflected an "internal inconsistency" and "computational problem," namely, that the arbitrator "rejected all of Respondents' [cost of goods sold ("COGS")] claims, yet the past 'lost profits' damages awards (a) were based on Respondents' damages analysis that relied exclusively and completely on Respondents' rejected COGS claims, and (b) that the COGS-based damages model has no connection whatsoever to Respondents' favorable advertising fee/royalties price claim."  (Pet'r's Mem. 8.)  On August 10, 2020, the arbitrator denied Petitioner's Motion to correct, finding that it was beyond the scope of Commercial Arbitration Rule 50.  (*Id.* at 9; *see also* Van Nostrand Decl. Ex. 12 "(Order on AAA Rule 50 Motion") (Dkt. No. 7-14).)  The decision stated:

> The relief Golden Krust seeks is beyond the scope of Rule 50.  The Interim Decision calculated Claimants' actual damages by measuring their lost past profits, an entirely appropriate measure of damages.  To grant Golden Krust's motion, the Arbitrator would have to determine that Claimants are not entitled to past lost profits on their claims.  Such an analysis is a redetermination of the measure of Claimants' damages, not the correction of a computational error.  Accordingly, the Motion is denied.

(Order on AAA Rule 50 Motion at 2.)  On September 1, 2020, the arbitrator issued the Final Award, which fully incorporated the findings of the Interim Decision.  (*See* Final Award 1.)  The Final Award awarded Respondents $666,617.16 in damages.[1]  (*Id.* at 1–2.)  The arbitrator also

---

[1] This award reflects a principal amount of $623,090 (as awarded in the Interim Decision) plus interest in the amount of $43,527.16.  (*See* Final Award 1–2.)  Of that amount, Golden Krust is to pay $318,123.03 to Actus and $348,494.13 to Klayrock.  *(See id.)*

4

awarded Respondents $899,184.17 in attorney's fees and costs.[2] (*Id.* at 2.) Finally, the arbitrator awarded Respondents an additional $35,600, jointly and severally, to cover their American Arbitration Association ("AAA") fees. (*Id.*) The arbitrator denied Petitioner's request for attorney's fees and costs. (*Id.*)

On September 8, 2020, Petitioner filed the instant Petition in this Court. (Dkt. No. 1.) On October 16, 2020, Respondents filed an Answer to Petition to Vacate Arbitration Award and a Cross-Petition to Confirm Arbitration Award. (Dkt. No. 19.)

## II. Discussion

### A. Standard of Review

"It is well established that courts must grant an arbitration panel's decision great deference. A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003); *see also ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) ("If the parties agreed to submit an issue for arbitration, [the Second Circuit] will uphold a challenged award as long as the arbitrator offers a barely colorable justification for the outcome reached." (internal quotation marks omitted)); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 700–01 (2d Cir. 1978) (noting that the Second Circuit is hesitant to "second-guess an arbitrator's resolution of a contract dispute."). "[T]o avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation, arbitral awards are subject to very limited review." *Zurich Am. Ins. Co.*

---

[2] Of this amount, Actus is entitled to $431,608.40, and Klayrock is entitled to $467,575.77. (*Id.* at 2.)

5

*v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) (internal quotation marks omitted) (alteration in original). Indeed, "any party seeking to vacate an arbitration award faces a steeply uphill battle." *Glob. Gold Min. LLC v. Caldera Res., Inc.,* 941 F. Supp. 2d 374, 385 (S.D.N.Y. 2013).

Pursuant to § 10(a) of the Federal Arbitration Act ("FAA"), a court may enter an order vacating an arbitration award only under the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definitive award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) ("[T]he principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." (internal quotation marks omitted)); *Beljakovic v. Melohn Properties, Inc.*, No. 04-CV-3694, 2012 WL 5429438, at *2 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 542 F. App'x 72 (2d Cir. 2013) ("Consistent with federal policy favoring arbitration, these vacatur provisions are to be accorded the narrowest of readings." (internal quotation marks omitted)). Additionally, the Second Circuit has also found, "as judicial gloss on these specific grounds for vacatur of arbitration awards," that a "court may set aside an arbitration award if it was rendered in manifest disregard of the law." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks omitted) (collecting cases)).

Alternatively, under § 11 of the FAA, a court "may make an order modifying or correcting the award upon the application of any party to the arbitration" where there was "an evident material mistake in the description of any person, thing, or property referred to in the

6

award" or where "the award is imperfect in matter of form not affecting the merits of the controversy."  9 U.S.C. § 11(a), (c).

B.  Analysis

Petitioner argues that the Arbitration Award should be vacated on two theories: (1) because the arbitrator's liability and damages findings were "internally inconsistent and contradictory," and (2) "in manifest disregard of the applicable law."  (Pet. ¶ 41.)  The Court will address each theory in turn.

1. Whether the Arbitration Award is Internally Inconsistent

Petitioner alleges that the Interim Decision is inconsistent because:

> the arbitrator rejected all of Respondents' COGS claims, yet the past 'lost profits' damages awarded (a) were, in reality, based on Respondents' damages analysis that relied exclusively and completely on Respondents' rejected COGS claims, and (b) had no connection whatsoever with the liability or evidentiary findings actually made on Respondents' favorable advertising fee/royalties and pricing claims. That calculation is internally inconsistent with and contradicted by the arbitrator's own liability findings.

(Pet'r's Mem. 12.)  However, "internal inconsistencies within an arbitral judgment are not grounds for vacatur."  *Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 211–12 (2d Cir. 2002); *see also Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44–45 (2d Cir. 1997) ("Internal inconsistencies in the opinion are not grounds to vacate the award notwithstanding the [petitioner's] plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion."); *Fairchild Corp. v. Alcoa, Inc.,* 510 F. Supp. 2d 280, 290 (S.D.N.Y. 2007) (confirming award because even if "the [a]rbitrator's ruling were deemed inconsistent, by itself that deficiency would not suffice as grounds for vacating the [a]ward"); *InterDigital Commc'ns Corp. v. Nokia Corp.*, 407 F. Supp. 2d 522, 530 n.5 (S.D.N.Y. 2005) ("[E]ven when a portion of an arbitral decision is ambiguous or

confusing, [courts] need only find that the award is not 'inexplicable' in order to deny vacatur.") (quoting *Hardy v. Walsh Manning Sec., L.L.C.*, 341 F.3d 126, 132 (2d Cir. 2003)).

Petitioner cites *Bell Aerospace Co. Div. of Textron v. Loc. 516, Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 500 F.2d 921 (2d Cir. 1974), and *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105 (2d Cir. 2019) to support its Petition. (Pet'r's Mem. 11–12.) Neither helps Petitioner here. In both *Bell Aerospace* and *Weiss*, the arbitration awards were so ambiguous and contradictory that they were incomprehensible. In *Bell Aerospace*, the Second Circuit "characterized [the] arbitration award as not only 'ambiguous' but 'contradictory on its face,' . . . [and] also noted that '(n)one of the parties ha[d] advanced a clear and compelling interpretation of the award.'" *Kallen v. Dist. 1199, Nat. Union of Hosp. & Health Care Emp., RWDSU, AFL-CIO*, 574 F.2d 723, 726 (2d Cir. 1978) (quoting *Bell Aerospace*, 500 F. 2d at 924) (internal citations omitted) (alterations in original).[3] In *Weiss*, the Second Circuit vacated an arbitration award where it was "incoheren[t]" and "ignored and contradicted an unambiguous term of the agreement." *Weiss*, 939 F.3d at 110–11. Here, the Arbitration Award is not ambiguous. It sets a "definite sum to be paid by" Petitioner. *See Kallen*, 574 F. 2d at 726 (distinguishing from *Bell Aerospace* and declining to vacate arbitration award where award specified a definite sum to be paid by one party). And unlike in *Bell Aerospace*, Petitioner has "advanced a clear and compelling interpretation of the award," *id.* at 726, which is consistent with the findings in the Interim Decision and Final Award, (*compare* Pet'r's Mem 8–10 *with*

---

[3] The Court notes that in *Weiss*, the Second Circuit analyzed the arbitration award under the "manifest disregard of the law" standard, which will be addressed *infra*. *See Weiss*, 939 F.3d at 109.

8

Interim Decision 9 *and* Final Award 1–3).[4]  In contrast to *Bell Aerospace* and *Weiss*, the award here is unambiguous, even if Petitioner disagrees with it.  However, this is not a ground on which this Court is entitled to vacate an arbitration award.  *See Saint Mary Home*, 116 F.3d at 44 ("'[C]onfirmation of [arbitration] award[s] cannot be prevented by litigants who merely argue, however persuasively, for a different result.'" (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir. 1978))); *Fairchild*, 510 F. Supp. 2d at 290 ("[A]t bottom [the petitioner's] challenge basically reflects not an invalidating flaw in the [a]ward, but [an] instance of [the petitioner's] quarrel with the [a]rbitrator's factual findings, which not a sufficient justification to reverse an arbitral decision.").

Respondents point out that in both *Bell Aerospace* and *Weiss*, the court remanded the award for clarification, "something the [P]etition here did not seek." (Resp'ts' Reply. at 3.)[5] Even if Petitioner did seek clarification of the Arbitration Award, that would not be warranted

---

[4] In the Interim Decision, the arbitrator concluded that "[Golden Krust] is liable to Auctus for its lost past profits in the principal amount of $297,351.00 and is liable to Klayrock in the principal amount of $325,739.00." (Interim Decision 9.)  When added together, these numbers equal $623,090, the figure to which Petitioner refers in its Memorandum (Pet'r's Mem. 8) ("In the Interim Decision, the arbitrator found that Respondents were entitled to lost past profits of $623,090.")  Similarly, in the Final Award, the arbitrator concluded that Respondents are entitled to $899,184.17 in attorneys' fees and costs, in addition to "the sum of $35,600, representing AAA fees." (Final Award 2.)  These numbers, again, are consistent with the numbers outlined by Petitioner in its Memorandum. (Pet'r's Mem. 6.)  ("[T]he arbitrator concluded . . . that Respondents were entitled to all of their attorneys' fees and costs—a total of $899,184.17 . . . [and] chose to award Respondents an extra benefit of $35,600 in AAA fees.").  Petitioner has therefore "advanced a clear and compelling interpretation of the award." *Kallen*, 574 F. 2d at 726.

[5] Respondents are correct that Petitioner appears to seek only to vacate the Arbitration Award pursuant to 9 U.S.C. § 10. (S*ee generally* Petition.)  Although Petitioner cites once to 9 U.S.C. § 11 in its Memorandum, (*see* Pet'r's Mem. 10), whereby a court can make an order modifying or correcting an arbitration award, nowhere does Petitioner—either in its Petition or Memorandum—specifically request clarification of the Arbitration Award, (*see generally* Petition; Pet'r's Mem.).

9

here.  "A district court can remand an award to the arbitrator for clarification where an award is ambiguous." *Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 370 (2d Cir. 1999) (remanding an award where the arbitrator's decision "created ambiguity" as to "the identity of the person or persons intended to be subject to the award's remedy); *see also Est. of Scherban v. Lynch,* No. 14-CV-6312, 2021 WL 2581278, at *4 (S.D.N.Y. June 23, 2021).  However, as discussed, the Arbitration Award, as outlined in the Interim Decision and Final Award, is not ambiguous.

The Court therefore declines to vacate the Arbitration Award—or remand it for clarification—on the grounds that it is internally inconsistent.

<u>2. Whether the Arbitration Award is a Manifest Disregard of the Law</u>

Petitioner next argues that the Arbitration Award should be vacated on grounds of manifest disregard of the law.  (*See* Pet'r's Mem. 3.)  "A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks omitted).  A court may vacate an arbitral award on this ground only if the court "finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (alterations omitted); *see also Zurich*, 811 F.3d at 589 (denying motion to vacate arbitration where "[i]t [was] arguable that the [petitioner's] evidence could have supported a contrary conclusion" because that did not amount to the arbitrator "manifestly disregard[ing] the law."). This "clearly means more than error or misunderstanding with respect to the law." *Wallace*, 378 F.3d at 189. "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. . . . On the contrary, the award should be

enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached." *Lynch*, 2021 WL 2581278 at *9 (internal citations and quotation marks omitted) (emphasis in original).

First, Petitioner argues that the Arbitration Award of lost past profits to Respondent must be vacated as a manifest disregard of the law, because "lost past profits are not recoverable under [FDUPTA]." (Pet'r's Mem. 3.) However, "courts in the Eleventh Circuit are split on whether *past* lost profits are permissible under FDUTPA." *Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, No. 19-CV-24857, 2020 WL 2494608, at *6 (S.D. Fla. May 14, 2020) (emphasis in original); *see also Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc,* No. 17-CV-00686, 2018 WL 7351689, at *6 n.15 (N.D. Fla. Sept. 27, 2018) (collecting cases). As explained in *Midway*,

> [S]ome Florida district courts find that past lost profits are actual damages and may be recovered. . . . On the other hand, other district courts within Florida also find that past lost profits constitute consequential damages and may not be recovered under FDUTPA. The Florida Supreme Court has not decided the issue . . . . [and] the Eleventh Circuit Court of Appeals has not resolved the split either.

*Midway Labs*, 2020 WL 2494608, at *6 (internal citations, quotation marks, and emphasis omitted). However, "[m]anifest disregard can be established only where a governing legal principle is well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002) (internal quotation marks omitted). Here, where the arbitrator picked one side to "resolv[e] the conflicting precedent . . . , the arbitral decision cannot be said to have exhibited a manifest disregard of the law." *Id.* at 1217.

Second, Petitioner argues that "no fact or expert evidence was introduced to establish any type of causal nexus between the alleged past lost profits awarded and the conduct on which the

11

arbitrator based her liability findings." (Pet'r's Mem. 3.)  In making this claim, Petitioner asks the Court to weigh the evidence presented by the Parties, which the Court is not permitted to do. *See Wallace*, 378 F.3d at 193 ("To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so *only* for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law.  A federal court may not conduct a reassessment of the evidentiary record . . . ." (emphasis in original)); *Washington Nat'l Ins. Co. v. Obex Group LLC*, 2019 WL 266681, at *6 (S.D.N.Y. Jan.18, 2019) ("[I]t is for the [arbitrator], not the [c]ourt, to . . . evaluate the evidence . . . .").  Indeed, "[a]lthough [Petitioner] attempt[s] to disguise [its] arguments as legal ones, [Petitioner] seek[s] to challenge the [arbitrator's] interpretation of the evidence.  This is not a proper ground for vacatur." *Lynch,* 2021 WL 2581278, at *9.  Moreover, the Court concludes—based on the limited review it is entitled to do—that the damages awarded to Respondents were reasonably related to the conduct on which the arbitrator based her liability findings.  As described *supra*, the arbitrator found Petitioner liable for (1) breach of contract and violation of FDUTPA for imposing higher royalties and advertising fees on franchises not owned and operated by members of the family of the founder of Golden Krust, and (2) violation of FDUPTA for selling food products at lower prices to family-owned franchises than to non-family-owned franchises, which amounted to an unfair or deceptive trade practice.  (*See* Interim Decision 5–6; Pet'r's Mem. 6–7.)  As a remedy, the arbitrator imposed damages in the form of lost past profits but denied Respondents' demand for future lost profits as "inconsistent with the liability findings." (Interim Decision 9.)  This determination meets the required "barely colorable justification" standard required by the Second

Circuit. *E.g.*, *ReliaStar Life Ins.*, 564 F.3d at 86 (quoting *Banco de Seguros del Estado*, 344 F.3d at 260); *Wallace*, 378 F.3d at 190 (same).

In sum, the Court declines to vacate the Arbitration Award on the grounds that it is a manifest disregard of the law.

### III. Conclusion

For the foregoing reasons, Petitioner's Petition to vacate the Arbitration Award is denied, and Respondents' Counter-Petition to confirm the Arbitration Award is granted. The Clerk of Court is respectfully directed to terminate the instant Petition and Counter-Petition and close this case. (Dkt. Nos. 1, 19).

SO ORDERED.

DATED:   October 26, 2021
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE